**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2775
_____


ORLANDO FERNANDEZ TAVERAS,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                                        Respondent

_____


Petition for Review of an Order of the
Board of Immigration Appeals
Agency No.  A035-362-472

_____


Argued on May 22, 2013

(Opinion filed: October 1, 2013)

BEFORE:  RENDELL and GREENAWAY, JR.,
Circuit Judges, ROSENTHAL, District Judge*

Sandra L. Greene, Esquire  **(Argued)**
GreeneFitzgerald Advocates and Consultants
2001 East Market Street, 2nd Floor
York, PA 17402

*Counsel for Petitioner*

Eric Holder, Jr., Esquire
United States Attorney General
Stuart F. Delery, Esquire
Acting Assistant Attorney General
Civil Division
Cindy S. Ferrier
Assistant Director
Office of Immigration Litigation
Thomas W. Hussey, Esquire
Sunah Lee, Esquire  **(Argued)**
Brooke M. Maurer, Esquire
United States Department of Justice
Office of Immigration Litigation
Civil Division
P.O. Box 878
Ben Franklin Station
Washington, D. C. 20044

*Counsel for Respondent*

---

* Honorable Lee H. Rosenthal, United States District Judge
for the Southern District of Texas, sitting by designation.

## O P I N I O N

**RENDELL,** <u>Circuit Judge</u>:

Orlando Fernandez Taveras petitions for review of the Board of Immigration Appeals ("BIA") June 2012 order of removal. The removal order was based on two convictions for petty larceny, both crimes of moral turpitude under the Immigration and Nationality Act ("INA"). The BIA rejected Fernandez Taveras's argument that he was eligible for adjustment of status or waiver of inadmissibility under § 212(h) of the INA, notwithstanding a 1999 drug conviction. Fernandez Taveras urged that, because he had previously been granted a cancellation of removal under INA § 240A(a), the conviction that formed the basis of the prior removal proceedings—his 1999 drug conviction—had been "waived" and could not be relied upon in the later proceeding to render him statutorily ineligible for adjustment of status and § 212(h) waiver. The Immigration Judge agreed with Fernandez Taveras, but the BIA reversed. Fernandez Taveras's petition raises this issue, and for the reasons that follow, we will deny his petition.

## I.

Fernandez Taveras, a native and citizen of the Dominican Republic, entered the United States as a lawful permanent resident in February 1978. He was one year old at the time, and has since left the country only twice—once at age five and again at age thirteen. In December 2009, he married a United States citizen. He also is a father of two

3

children who are United States citizens: a fifteen-year-old daughter from a prior relationship, and a five-year-old daughter with his wife. Additionally, he has other family ties in the United States, including his mother, siblings, aunts, and cousins, who are citizens or lawful permanent residents of the United States.

The Department of Homeland Security ("DHS") initiated removal proceedings against Fernandez Taveras in 2003 based upon his 1999 conviction under New York state law for criminal possession of a controlled substance, specifically, crack cocaine (the "1999 drug conviction"). The DHS sought to remove Fernandez Taveras as an alien deportable for a controlled substance violation, other than a single offense involving possession for one's own use of 30 grams or less of marijuana, pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i). Fernandez Taveras sought cancellation of removal under INA § 240A(a), 8 U.S.C. § 1229b(a), which provides relief from removal for certain permanent residents who can demonstrate a lengthy physical presence and substantial ties in the United States, and have not committed an aggravated felony. INA § 240A(a), 8 U.S.C. § 1229b(a).[1] The Immigration Judge ("IJ") granted his application for cancellation of removal in 2004, which terminated the removal proceedings.

Over five years later, in January 2010, the DHS instituted a second removal proceeding against Fernandez Taveras. This time, the Notice to Appear charged Fernandez Taveras with removability under INA § 237(a)(2)(A)(ii), 8

---

[1]Fernandez Taveras's 1999 drug conviction was not an aggravated felony.

4

U.S.C. § 1227(a)(2)(A)(ii), as an alien deportable for committing two or more crimes involving moral turpitude ("CIMT"). Specifically, Fernandez Taveras's removal proceedings arose from two convictions in 2006 and 2008 for petit larceny under New York state law.

Fernandez Taveras admitted the factual allegations in the Notice to Appear, and conceded that he was removable as charged. Fernandez Taveras then sought relief from removal by filing an application for adjustment of status under INA § 245(a), 8 U.S.C. § 1255(a), and an application for a waiver of inadmissibility under INA § 212(h), 8 U.S.C. § 1182(h).[2]

The IJ issued an oral decision finding that Fernandez Taveras was removable as an alien deportable for committing two CIMT as defined in the statute. However, the IJ granted Fernandez Taveras a § 212(h) waiver and granted his application for adjustment of status. Because Fernandez Taveras's 1999 drug conviction had been the basis for the prior proceedings, which resulted in the cancellation of removal, the IJ accepted Fernandez Taveras's argument that he had essentially received a "waiver" of that conviction such that he could no longer be found inadmissible for that offense

---

[2] Having already received a grant of cancellation of removal in his first removal proceedings, Fernandez Taveras was ineligible for a second cancellation of removal. *See* INA § 240A(c)(6), 8 U.S.C. § 1229b(c)(6) (providing that § 240A(a) "shall not apply to any . . . alien whose removal has previously been cancelled under this section").

5

under INA § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II), or ineligible for § 212(h) waiver.[3]

The IJ rejected the contrary view of the Fifth Circuit Court of Appeals in *De Hoyos v. Mukasey*, 551 F.3d 339, 342 (5th Cir. 2008), finding it distinguishable, in part, because, in the IJ's view, it did not account for the INA's statutory scheme, particularly § 101(a)(13)(C)(v), 8 U.S.C. § 1101(a)(13)(C)(v). As we discuss below, this provision governs matters concerning whether lawful permanent residents reentering the United States are "seeking admission." The IJ, however, read § 101(a)(13)(C)(v) to apply to an alien seeking adjustment of status, and to suggest "that once a waiver is granted for an offense under Section 240A(a) of the INA, that that alien will not be subsequently inadmissible for that offense." App. at 49. Accordingly, the IJ concluded, Fernandez Taveras was "statutorily eligible to apply for adjusting of status and for a waiver under Section 212(h) of the INA, notwithstanding his drug conviction, which would [otherwise] render him inadmissible under Section 212(a)(2) of the INA for a drug offense that cannot be waived under Section 212(h) of the INA." *Id.*

The DHS appealed the IJ's decision, and the BIA agreed with the DHS that Fernandez Taveras was ineligible to adjust his status and receive a § 212(h) waiver due to his 1999

---

[3] While the 1999 drug conviction was not an aggravated felony that would statutorily disqualify him from cancellation of removal, as we discuss below, it would render him ineligible for a § 212(h) waiver and prevent him from meeting the admissibility prerequisite for an adjustment of status.

drug conviction. The BIA concluded that the IJ had erred in his "interpretation of the law" by determining that a "grant of cancellation of removal in prior removal proceedings precluded consideration of his drug possession conviction" in connection with Fernandez Taveras's application for adjustment of status. App. at 3. This determination, the BIA concluded, was at odds with the Board's controlling precedent, particularly, *Matter of Balderas*, 20 I. & N. Dec. 389 (BIA 1991), which, the BIA explained, instructs "that a waiver of inadmissibility or deportability waives only the ground charged, but not the underlying basis for removability." App. at 5. Under *Balderas*'s rationale, Fernandez Taveras's prior drug conviction could statutorily constitute an underlying basis for inadmissibility and render him ineligible for a § 212(h) waiver. *Id.*[4] The BIA also rejected the notion that that the enactment of § 101(a)(13)(C) somehow affected *Balderas*'s "longstanding principle," instead, concluding that it applied to an entirely different procedural situation, as we discuss below. *Id.*

Considering Fernandez Taveras's applications for adjustment of status and § 212(h) waiver in light of his 1999 drug conviction, the BIA concluded that his "drug possession conviction clearly renders him inadmissible under section 212(a)(2)(A)(i)(II) of the Act, so he is not statutorily eligible for adjustment of status" nor eligible for a Section 212(h) waiver. *Id.* The BIA sustained the DHS's appeal, vacated the IJ's decision, and ordered Fernandez Taveras's removal from the United States to the Dominican Republic.

---

[4] As we note below, *Balderas* was decided under the former INA § 212(c) but the BIA had little difficulty applying it to a § 212(h) waiver situation.

7

Fernandez Taveras timely filed this petition for review of the BIA's order.

## II.

We have general jurisdiction under 8 U.S.C. § 1252(a)(1) to review a final order of removal against an alien. Generally, we lack jurisdiction to review a final order of removal against an alien who has been convicted of certain criminal offenses. 8 U.S.C. § 1252(a)(2)(C). However, we retain jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to "review . . . constitutional claims or questions of law raised upon a petition for review," and apply de novo review, subject to applicable canons of deference. *Santos-Reyes v. Att'y Gen.*, 660 F.3d 196, 199 (3d Cir. 2011).

## III.

As illustrated by the divergent rulings of the IJ and BIA, whether Fernandez Taveras qualifies for relief from removal hinges on whether his 1999 drug conviction continues to constitute grounds of ineligibility for adjustment of status and § 212(h) waiver, notwithstanding the earlier grant of § 240A(a) cancellation of removal. Fernandez Taveras cannot meet the statutory requirements for adjustment of status and § 212(h) waiver if we conclude that the 1999 drug conviction was appropriately considered. The 1999 drug conviction would be a basis for Fernandez Taveras's inadmissibility under § 212(a)(2)(A)(i)(II) for having violated a law "relating to a controlled substance." 8 U.S.C.§ 1182(a)(2)(A)(i)(II). Similarly, a § 212(h) waiver could not apply to "waive the application of . . . subparagraph (A)(i)(II)" because the 1999 drug conviction did not "relate[]

8

to a single offense of simple possession of 30 grams or less of marijuana." 8 U.S.C. § 1182(h). And, without the availability of a § 212(h) waiver, his inadmissibility would render him ineligible for adjustment of status and thus relief from removal. *See* 8 U.S.C. § 1255(a)(2) (mandating as a prerequisite for adjustment of status that an alien "is admissible to the United States for permanent residence").[5]

Fernandez Taveras argues that the IJ correctly excluded his 1999 drug conviction from his second removal proceeding because he had received a cancellation of removal under § 240A(a) in a previous proceeding based on that conviction. Fernandez Taveras urges that the § 240A(a) grant of relief should have preclusive effect in any subsequent removal proceeding, barring the use of the same conviction as a later ground for inadmissibility and ineligibility for

---

[5]As an alternative argument on appeal, Fernandez Taveras contends that he was denied due process for lack of opportunity to establish his admissibility, and specifically, to challenge his inadmissibility on the basis of his 1999 drug conviction. Fernandez Taveras does not dispute that he received the 1999 drug conviction and that it was the grounds for his first removal proceeding. Appellant Br. at 8-9; App. at 16. However, he claims that the factual determination of this conviction was without sufficient documentary evidence from the prior removal proceedings. Appellant Br. at 37. We fail to see how due process was denied when none of the facts of Fernandez Taveras's convictions, and particularly his 1999 drug conviction, are in dispute. Rather, Fernandez Taveras only disputes matters of law relating to his drug conviction, including whether he is statutorily eligible for admissibility— issues which we address in this opinion.

removal. The DHS advocates for the BIA's view that a previous § 240A(a) cancellation of removal does not have such preclusive effect. We agree and conclude that § 240A(a) relief merely cancelled the removal in Fernandez Taveras's first removal proceeding, and has no bearing on the existence or effect of the 1999 drug conviction in subsequent removal proceedings based on other grounds. Specifically, the grant of § 240A(a) relief in his first removal hearing has no bearing on whether that conviction can be considered in connection with his seeking adjustment of status and § 212(h) waiver in his second removal proceeding.

In the previous removal proceeding, Fernandez Taveras sought cancellation of removal, notwithstanding the DHS's desire to remove him based on his 1999 drug conviction. A § 240A(a) cancellation allows the Attorney General (here, the IJ in the first removal proceeding acted in this capacity) to provide discretionary relief from removal by cancelling the removal itself. The nature of this relief is delineated by the unambiguous language of the statute, which provides: "The Attorney General may *cancel removal* in the case of an alien who is inadmissible or deportable from the United States . . . ." 8 U.S.C. § 1229b(a) (emphasis added). Thus, the removal is cancelled, nothing more. The underlying conviction stands unaffected.

The Fifth Circuit Court of Appeals, when addressing this very issue in *De Hoyos*, concluded that the "plain language suggests that the Attorney General cancels *removal* itself, not the underlying conviction" charged in the removal proceeding. 551 F.3d at 342. Indeed, in spite of a cancellation of the removal proceeding based upon that conviction, the "conviction may still be a factor that relates to admissibility when determining [an] application for

10

adjustment of status" in a later removal proceeding. *Id.* While the IJ expressed some disagreement with *De Hoyos*, we instead find its reasoning sound and adopt it.[6]

Our interpretation of § 240A(a) is also consistent with the historical nature of the Attorney General's discretionary authority to grant relief from deportation under the INA. Immigration law has long vested the Attorney General with broad discretion to admit aliens who were excludable for, *inter alia*, certain criminal convictions, and this discretion continuously has been extended to grant aliens a discretionary waiver from deportation. *See INS v. St. Cyr*, 533 U.S. 289, 294 (2001). Former INA § 212(c) was one such statutory provision that provided for this type of discretionary relief. Under this provision, "if [waiver was] granted, the deportation proceeding . . . terminated and the alien remain[ed] a permanent resident." *Id.* at 295. "Because of the large class of convictions that triggered removability, section 212(c) was frequently called upon to enable permanent resident aliens to remain in the country." *Atkinson v. Att'y Gen.*, 479 F.3d 222, 226 (3d Cir. 2007). Upon the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3009 (1996), provisions of the former § 212(c) were consolidated with other relief known as "suspension of deportation," 8 U.S.C. § 1254(a) (1994), to create "cancellation of removal" relief under § 240A(a). *See Rodriguez-Munoz v. Gonzales*, 419 F.3d 245, 247 (3d Cir.

---

[6] The Sixth Circuit Court of Appeals has similarly described cancellation of removal as "allow[ing] the Attorney General to cancel removal proceedings for certain resident aliens." *Kellermann v. Holder*, 592 F.3d 700, 705 (6th Cir. 2010).

11

2005); *see also* 5 Charles Gordon et al., *Immigration Law and Procedure* § 64.04 (2013) [hereinafter *Immigration Law*].

In *Balderas*, the BIA explained the parameters of former § 212(c) relief, noting that "section 212(c) merely provides that an alien may be admitted to or, in the case of deportation proceedings, allowed to remain in the United States despite a finding of excludability or deportability." 20 I. & N. Dec. at 391. "[S]ince a grant of section 212(c) relief 'waives' the finding of excludability or deportability rather than the basis of the excludability itself, the crimes alleged to be grounds for excludability or deportability do not disappear from the alien's record for immigration purposes." *Id.* As the BIA further clarified, "[W]hen section 212(c) relief is granted, the Attorney General does not issue a pardon or expungement of the conviction itself. Instead, the Attorney General grants the alien relief upon a determination that a favorable exercise of discretion is warranted on the particular facts presented, notwithstanding the alien's excludability or deportability." *Id.* (footnote omitted). Relying on regulations governing the application of a § 212(c) waiver, the BIA also described the waiver as indefinitely valid once granted, but that "relief is specific to the grounds stated [in the § 212(c) application] at the time of the grant of relief." *Id.* at 393.

Several courts of appeals, including our own, have approved the limited "waiver" concept embraced by *Balderas* in the context of a § 212(c) waiver that is followed by another cancellation of removal proceeding, so that a prior conviction, which was charged as grounds for removal in a proceeding in which § 212(c) waiver was granted pre-IIRIRA precludes eligibility for § 240A cancellation of removal in a post-IIRIRA removal proceeding. *See Duhaney v. Att'y Gen.*, 621

12

F.3d 340, 353 (3d Cir. 2010); *Rodriguez-Munoz*, 419 F.3d at 248; *see also Esquivel v. Mukasey*, 543 F.3d 919, 922-23 (7th Cir. 2008); *Peralta-Taveras v. Att'y Gen.*, 488 F.3d 580, 584-85 (2d Cir. 2007); *Becker v. Gonzales*, 473 F.3d 1000, 1003 (9th Cir. 2007); *Munoz-Yepez v. Gonzales*, 465 F.3d 347, 350 (8th Cir. 2006); *Amouzadeh v. Winfrey*, 467 F.3d 451, 458-59 (5th Cir. 2006). As we noted in *Duhaney v. Attorney General*, "we have determined, relying on *Balderas*, that the fact that a petitioner's deportation based on a particular conviction has been waived [by former § 212(c)] does not prevent subsequent consideration of the same underlying conviction for other purposes." 621 F.3d at 353 (citing *Rodriguez-Munoz*, 419 F.3d at 248). We also explained that "the scope of a § 212(c) waiver is defined by the basis for deportability, not the underlying crime itself," *id.*, and that although a "§ 212(c) waiver remains valid indefinitely, . . . it applies *only* to the basis for deportation charged in the [removal proceeding in which the relief was granted]," *id.* at 353-54 (emphasis added).

Admittedly, the statutory and procedural posture of this case—mainly under § 240A(a) and not § 212(c)—while similar to *Balderas*, is nonetheless different. However, in *De Hoyos*, the Fifth Circuit Court of Appeals addressed whether former § 212(c) jurisprudence should be considered instructive as to the effect of the grant of § 240A relief in a situation such as this, and found that it should. There, an alien sought relief from removal by applying for adjustment of status, having previously been granted a § 240A(a) cancellation of removal in a prior removal proceeding that was based upon a marijuana possession conviction for an amount greater than 50 pounds and less than 2,000 pounds. *De Hoyos*, 551 F.3d at 340. In the subsequent removal

13

proceedings, instituted based upon two theft convictions, the IJ denied De Hoyos's application for adjustment of status, in part, on account of his marijuana possession conviction, notwithstanding his prior grant of § 240A(a) cancellation of removal. *Id.*

In denying the petition for review of the BIA's removal order, the Fifth Circuit Court of Appeals recognized that former § 212(c) jurisprudence is instructive as to the nature § 240A(a) relief. Relying on its precedent approving *Balderas*, the court acknowledged that "a conviction that was the focus of a previous waiver under § 212(c) may still be a grounds of inadmissibility that statutorily precludes an alien's acquisition of § 212(h) relief in further removal proceedings." *Id.* at 342. Our sister court concluded that "[a]lthough the *Balderas* decision applied to the predecessor of § 240A (former § 212(c)), the Board's [*Balderas*] rationale applies with equal force to the effect of cancellation of removal on an underlying conviction." *Id.* at 342-43 (internal quotation marks omitted).

We agree with *De Hoyos* that former INA § 212(c) jurisprudence, and particularly *Balderas*, is applicable in determining the scope of a § 240A(a) waiver. Thus we look to our case law, as described in *Duhaney*, concerning the effect of a § 212(c) waiver to inform us here. *See Duhaney*, 621 F.3d at 353-54; *see also Rodriguez-Munoz*, 419 F.3d at 248. Given that we have previously found that a former § 212(c) waiver only cancels the removal proceedings for an alien who is inadmissible or deportable, we determine the same is equally true of a § 240A(a) cancellation of removal. Like a § 212(c) waiver, the effect of § 240A(a) relief is circumscribed by the grounds of the removal proceeding in

14

which the relief was granted. In Fernandez Taveras's case, his § 240A(a) relief only cancelled his removal proceeding arising from his 1999 drug conviction under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i). When granted, the § 240A(a) waiver did not impact the underlying drug conviction itself, but only the removal arising from that conviction. It follows that the previous grant of § 240A(a) relief has no bearing upon whether Fernandez Taveras's 1999 drug conviction precludes him from satisfying the statutory requirements for adjustment of status and § 212(h) waiver sought in the second proceeding. Furthermore, because Fernandez Taveras's second removal proceeding is based upon different grounds of removability than his first removal proceeding—namely, he is removable for two CIMTs under INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii)—his prior § 240A(a) relief has no bearing on the second removal proceeding. By contrast, because § 240A(a) relief is limited to the grounds of removal, if his second removal had arisen from the same exact grounds for removability as his prior removal proceeding, *i.e.*, his 1999 drug conviction alone under INA § 237(a)(2)(B)(i), then his previous § 240A(a) waiver would bar that removal proceeding.

Fernandez Taveras urges, however, that we should adopt the IJ's view that INA § 101(a)(13)(C)(v) changes the calculus and should lead us to conclude that the INA's framework affords § 240A(a) relief that is broader than what we just described. Section 101(a)(13)(C)(v) provides that a lawful permanent resident "shall not be regarded as seeking admission" when the alien has committed a criminal offense that renders him inadmissible but thereafter has been granted

15

an adjustment of status or cancellation of removal relief.[7]  8 U.S.C. § 1101(a)(13)(C)(v).  Somehow equating an application for adjustment of status with "seeking an admission," Fernandez Taveras claims that this provision applies to him.  He contends that, having been granted § 240A(a) relief, there is no need to find him admissible—at least in relation to his 1999 drug conviction—in connection with his application for adjustment of status.

The BIA correctly rejected this same argument, concluding that this provision does not apply to applications for adjustment of status in removal proceedings and is actually not relevant to the scope of § 240A(a) relief.  Indeed, as the BIA recognized, "section 101(a)(13)(C)(v) is inapposite to the situation of a lawful permanent resident, such as the respondent, who was granted cancellation of

---

[7] This provision states:

> An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien—
>
> . . .
>
> (v) has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) [INA § 212(h)] or 1229b(a) [INA § 240A(a)] of this title . . . .

8 U.S.C. § 1101(a)(13)(C)(v).

16

removal after the commission of an offense identified in section 212(a) of the Act and later seeks to apply for adjustment of status in new removal proceedings after being found removable." App. at 3.

This is because the "admission" to which § 101(a)(13)(C) refers is an entirely different and unrelated immigration procedure from adjustment of status. Adjustment of status under INA § 245(a) serves to allow an alien who is already physically located in the United States after inspection and admittance or parole to obtain lawful permanent resident status while remaining within the United States without having to go abroad to obtain an immigrant visa at a United States consulate. *See Malik v. Att'y Gen.*, 659 F.3d 253, 257 (3d Cir. 2011). Aliens, like Fernandez Taveras, invoke this procedure in removal proceedings to seek relief from removal.

By contrast, as the BIA explained, the "purpose of section 101(a)(13)(C) is to regulate the circumstances under which returning lawful permanent residents may reenter the United States, upon inspection, without being classified as applicants for admission." App. at 3.[8] Ordinarily under the

---

[8] This view is consistent with the BIA's prior statements on § 101(a)(13)(C). *See Matter of Collado-Munoz*, 21 I. & N. Dec. 1061, 1065 (BIA 1998) ("[T]he . . . section specifically defines the circumstances under which a returning lawful permanent resident will be deemed to be seeking admission into the United States."); *Matter of Guzman Martinez*, 25 I. & N. Dec. 845, 846 (BIA 2012) ("[S]ection 101(a)(13)(C) of the Act establishes a presumption against treating a returning

17

INA's statutory scheme, "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . ) shall be deemed . . . an applicant for admission." INA § 235(a)(1), 8 U.S.C. § 1225(a)(1). At that time the alien must establish "clearly and beyond a doubt" entitlement to be admitted. INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A). However, § 101(a)(13)(C) provides aliens, who have previously been admitted and hold legal permanent resident status, with an exception to this rule when they seek to re-enter the United States at a port of entry after temporarily leaving the country. In such cases, the legal permanent resident "shall not be regarded as seeking an admission into the United States for purposes of the immigration laws" unless he or she falls into one of the six categories under § 101(a)(13)(C), such as having committed a criminal offense. 8 U.S.C. § 1101(a)(13)(C). "Returning lawful permanent residents are thus presumptively entitled to retain that status upon reentry." *Tineo v. Ashcroft*, 350 F.3d 382, 386 (3d Cir. 2003). However, "[i]f a lawful permanent resident falls into one of the six subsections, the clear import of [§ 101(a)(13)(C)] is that he is stripped of his lawful permanent residence. That is, he becomes an alien seeking admission as if he were entering for the first time." *Id.* Under such circumstances, it is incumbent upon the DHS to sustain the burden of proving that the alien falls within one of the six categories by clear and convincing evidence. *See Doe v. Att'y Gen.*, 659 F.3d 266, 272 (3d Cir. 2011).[9]

---

lawful permanent resident as an applicant for admission in removal proceedings.").

[9] Historically under immigration law, aliens were required to establish their admissibility upon each return to the United

The BIA's recognition that § 101(a)(13)(C)(v) governs an entirely different and unrelated immigration procedure from adjustment of status is also consistent with the Supreme Court's observation in *Vartelas v. Holder*, 132 S. Ct. 1479 (2012), that § 101(a)(13)(C) applies only to physical reentry, not adjustment of status. There, the Supreme Court described the provision as "attach[ing] a . . . disability (denial of reentry) in respect to past events" like prior convictions, and that under the provision "lawful permanent residents who had committed a crime of moral turpitude . . . [and then] return[ed] from brief trips abroad . . . are subject to admission procedures, and, potentially, to removal from the United States on grounds of inadmissibility." *Id.* at 1484-85. Indeed, the Court is in unanimity on this view of § 101(a)(13)(C). *Id.* at 1493 (dissenting, Scalia, J.) ("The operative provision of this text—the provision that specifies

---

States after traveling abroad, no matter how short the sojourn; this was known as the "re-entry doctrine" or "entry doctrine." *See, e.g.*, *United States* ex rel. *Volpe v. Smith*, 289 U.S. 422, 425-26 (1933); *see also Immigration Law* § 10.05. The Supreme Court later in *Rosenberg v. Fleuti*, 374 U.S. 449, 462 (1963), recognized an exception to the doctrine's admissibility requirements for lawful permanent residents returning from brief trips abroad. Section 101(a)(13)(C)(v), by providing a similar, albeit narrower, exception to the re-entry doctrine, is understood to codify certain aspects of *Fleuti*. *See Tineo*, 350 F.3d at 395 (recognizing that § 101(a)(13) "defines the new scheme of 'admission,' and it sets forth those circumstances under which lawful permanent residents may not retain their status upon reentry, thereby triggering removal proceedings"); *see also* 1 *Immigration Law* § 10.05.

19

the act that it prohibits or prescribes—says that lawful permanent residents convicted of [certain] offenses . . . must seek formal 'admission' before they return to the United States from abroad.").

Our agreement with the BIA is further bolstered by the statutory language itself, which reflects that "seeking admission" under § 101(a)(13)(C)(v) does not mean or refer to "adjustment of status." Under the INA, "[t]he terms 'admission' and 'admitted' mean, with respect to an alien, the lawful *entry* of the alien *into* the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). The words "entry" and "into" plainly indicate that "admission" involves physical entrance into the country, which is inapposite to adjustment of status in removal proceedings, a procedure that is structured to take place entirely within the United States.

Nonetheless, Fernandez Taveras urges that despite the statutory definition of "admission" under § 101(a)(13)(C), "entry" must be understood either as physically crossing a border or figuratively entering the United States. However, no case cited by Fernandez Taveras in support identifies the two procedures—admission and adjustment of status—to be one and the same. Rather, the relevant case law indicates that an alien can achieve the same result—lawful permanent resident status—by either seeking adjustment of status or admission, but does not suggest that the procedures are interchangeable. *See Matter of Alarcon*, 20 I. & N. Dec. 557, 562 (BIA 1992) ("As he is seeking to adjust his status to that of a lawful permanent resident, the respondent in this case is *assimilated to the position of* an applicant for entry into the United States." (emphasis added)); *see also Matter of Rosas-*

20

*Ramirez*, 22 I. & N. Dec. 616, 619 (BIA 1999) ("Our determination that aliens 'lawfully admitted for permanent residence' through the adjustment process are *considered to have* accomplished an 'admission' to the United States is supported by the language of the adjustment provisions themselves." (emphasis added)).[10]

Accordingly, we adopt the BIA's view that § 101(a)(13)(C)(v) does not apply to an applicant for adjustment of status in a removal proceeding, and thus has no bearing on our conclusions about the scope of § 240A(a) relief. A grant of § 240A(a) relief only cancels removal in a removal proceeding for an inadmissible or deportable alien, and a conviction serving as a basis for inadmissibility or deportability in that earlier proceeding may constitute a basis for ineligibility for adjustment of status and § 212(h) waiver in a subsequent removal proceeding. As such, we agree with the BIA that Fernandez Taveras's 1999 drug conviction—notwithstanding that it was charged as the basis for the prior removal proceeding in which Fernandez Taveras received a § 240A(a) waiver—may, and does, make him ineligible for relief from removal. His conviction is grounds for inadmissibility under INA § 212(a)(A)(i)(II) and ineligibility for a § 240A(a) waiver of inadmissibility. Because

---

[10]Contrary to Fernandez Taveras's claim otherwise, we do not read *Hanif v. Attorney General*, 694 F.3d 479 (3d Cir. 2012), which refers to "'admission' both as "an event or action" and as the "physical event of entering the country," as suggesting that an adjustment of status is "an event" that constitutes an admission. *Id.* at 485. Rather, *Hanif*'s treatment of these concepts is consistent with the notion that admission under § 101(a)(13)(A) pertains to seeking physical entry at a border. *Id.*

Fernandez Taveras is inadmissible, he cannot meet the prerequisites for adjustment of status. Accordingly, we will deny the petition for review.