PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1311
_____

JOSE SANTOS SANCHEZ; SONIA GONZALEZ

v.

SECRETARY UNITED STATES DEPARTMENT OF
HOMELAND SECURITY; DIRECTOR UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES;
DIRECTOR UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES NEBRASKA SERVICE
CENTER; DISTRICT DIRECTOR UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES
NEWARK,

          Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-16-cv-00651)
District Judge: Honorable Robert B. Kugler
_____

Argued January 15, 2020
Before: HARDIMAN, PORTER, and PHIPPS, *Circuit
Judges*.

(Filed: July 22, 2020)

Craig Carpenito, United States Attorney
Christopher Amore
Office of United States Attorney
970 Broad Street, Rm 700
Newark, NJ 07102

Matthew J. Glover [Argued]
Scott G. Stewart
United States Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

*Attorneys for Appellants*

Jaime W. Aparisi [Argued]
Aparisi Law
8630 Fenton Street, Suite 925
Silver Spring, MD 20910

Michael J. DeBenedictis
Debenedictis & Debenedictis
20 Brace Road, Suite 350
Cherry Hill, NJ 08034

*Attorneys for Appellees*

Mary A. Kenney [Argued]
National Immigration Litigation Alliance
10 Griggs Terrace

Brookline, MA 02446

Kristin A. Macleod-Ball
American Immigration Council
1318 Beacon St., Suite 18
Brookline, MA 02446

*Attorneys for Amicus Appellee*

———————

OPINION OF THE COURT

———————

HARDIMAN, *Circuit Judge*.

This appeal presents a question of statutory interpretation involving adjacent subsections of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*: Does the conferral of Temporary Protected Status (TPS) under § 1254a constitute an "admission" into the United States under § 1255? We hold it does not.

I

Jose Sanchez and Sonia Gonzalez (Plaintiffs or Appellees) are husband and wife and citizens of El Salvador. They entered the United States without inspection or admission in 1997 and again in 1998. Following a series of earthquakes in El Salvador in 2001, Plaintiffs applied for and received TPS. Over the next several years, the Attorney General[1] periodically

———————

[1] Although §§ 1254a and 1255 reference the Attorney General's authority and discretion in managing the TPS

extended TPS eligibility for El Salvadoran nationals, which enabled Plaintiffs to remain in the United States.

In 2014, Plaintiffs applied to become lawful permanent residents under § 1255. The United States Citizenship and Immigration Services (USCIS) denied their applications, explaining that Sanchez was "statutorily ineligible" for adjustment of status because he had not been admitted into the United States. And USCIS denied Gonzalez's application because it depended on the success of Sanchez's application.

Plaintiffs challenged that decision in the United States District Court for the District of New Jersey, arguing Sanchez was "admitted" into the United States when he received TPS. *Sanchez v. Johnson*, 2018 WL 6427894, at \*4 (D.N.J. 2018). The District Court granted Plaintiffs summary judgment, holding a grant of TPS meets § 1255(a)'s requirement that an alien must be "inspected and admitted or paroled" to be eligible for adjustment of status. *Id.* at \*5–6. The Court reasoned that being considered in "lawful status" is "wholly consistent with being considered as though Plaintiffs had been 'inspected and admitted' under § 1255." *Id.* at \*4. The Government filed this timely appeal.[2]

---

program, this authority now belongs to the Secretary of the Department of Homeland Security. *See Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137, 1140 n.3 (11th Cir. 2009) (citing 8 U.S.C. § 1103(a) & 8 C.F.R. § 244.2).

[2] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We review the summary judgment de novo, applying the same standard as the District Court. *Fraternal Order of Police,*

4

II

TPS shields foreign nationals present in the United States from removal during armed conflict, environmental disasters, or other extraordinary conditions in their homelands. 8 U.S.C. § 1254a(b)(1). Once TPS is granted, "*the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant*" for adjustment-of-status purposes under § 1255. 8 U.S.C. § 1254a(f)(4) (emphasis added).

Section 1255(a) permits certain aliens present in the United States (including some who received TPS) to adjust their status. It provides:

> The status of an alien *who was inspected and admitted or paroled* into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence.

8 U.S.C. § 1255(a) (emphasis added). The INA defines "admission" and "admitted" as "the lawful entry of the alien

---

*Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute over any material fact, so we review only the District Court's legal interpretation of §§ 1254a and 1255.

into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

As relevant here, an applicant is ineligible for adjustment of status under § 1255 if he "has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). An applicant may nevertheless seek adjustment of status despite that bar if "the alien, on the date of filing an application for adjustment of status, is present in the United States *pursuant to a lawful admission*." 8 U.S.C. § 1255(k)(1) (emphasis added).

## III

Appellees claim they are eligible for adjustment of status because they were admitted when they received TPS. We disagree because their interpretation of §§ 1254a and 1255 is inconsistent with the text, context, structure, and purpose of those sections.

## A

The text of §§ 1254a and 1255 supports our determination that a grant of TPS does not constitute an admission.

The Government argues the District Court erred when it held that "being in, and maintaining, lawful status as a nonimmigrant" includes being "inspected and admitted or paroled" as required by § 1255(a). According to the Government, "lawful status" does not qualify as an "admission" because the concepts are distinct. Appellees agree that these terms have distinct meanings, so they do not argue

6

that "being in any lawful status is equivalent to an admission." Sanchez Br. 8. Instead, they insist "that the process of obtaining TPS constitutes an admission, akin to an alien who is considered admitted after an adjustment of status." *Id.* (citing *In re Espinosa-Guillot*, 25 I. & N. Dec. 653, 654 (BIA 2011) ("An adjustment of status generally constitutes an admission.")). Appellees contend "[a]n individual's original entry is irrelevant because the subsequent grant of TPS . . . provides the 'lawful entry' referred to in § 1101(a)(13)." *Id.* at 15. And they emphasize that obtaining nonimmigrant status requires the admission of the alien, so the government admits TPS recipients by treating them as being in lawful nonimmigrant status under § 1254a(f)(4).

The Government's position is more consistent with the text of §§ 1254a and 1255. The INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). We have interpreted "admission" in § 1255(b) in accordance with that statutory definition. *Hanif v. Att'y Gen.*, 694 F.3d 479, 485 (3d Cir. 2012). And although "lawful status" is not defined in the INA, we have drawn a clear line between "admission" and "status," saying "[t]he date of gaining a new status is not the same as the date of the physical event of entering the country." *Id.*; *see also Taveras v. Att'y Gen.*, 731 F.3d 281, 290 (3d Cir. 2013) ("The words 'entry' and 'into' plainly indicate that 'admission' involves physical entrance into the country, which is inapposite to adjustment of status in removal proceedings, a procedure that is structured to take place entirely within the United

7

States."). Nothing in §§ 1254a or 1255 suggests we should interpret these terms differently now.[3]

Appellees principally argue that "[b]y the very nature of obtaining lawful nonimmigrant status, the alien goes through inspection and is deemed admitted." Sanchez Br. 8 (quoting *Ramirez v. Brown*, 852 F.3d 954, 960 (9th Cir. 2017) (internal quotation marks omitted)). This assertion is unpersuasive for at least three reasons.

First, the text of § 1254a does not mention that a grant of TPS is (or should be considered) an inspection and admission. Second, a grant of TPS cannot be an "admission" because § 1254a requires an alien to be present in the United States to be eligible for TPS. Consistent with that fact, we have

---

[3] The Fifth Circuit also has recognized the distinction between admission and status:

> Admission and status are fundamentally distinct concepts. Admission is an occurrence, defined in wholly factual and procedural terms: An individual who presents himself at an immigration checkpoint, undergoes a procedurally regular inspection, and is given permission to enter has been admitted, regardless of whether he had any underlying legal right to do so. Status, by contrast, usually describes the type of permission to be present in the United States that an individual has.

*Gomez v. Lynch*, 831 F.3d 652, 658 (5th Cir. 2016) (citations omitted).

recognized that TPS is not "a program of entry for an alien." *De Leon-Ochoa v. Att'y Gen.*, 622 F.3d 341, 353–54 (3d Cir. 2010). Third, although Appellees are correct that admission often accompanies a grant of lawful status, it does not follow that a grant of lawful status *is* an admission. For example, "a grant of asylum places the individual in valid immigration status but is not an 'admission.'" *In re H-G-G-*, 27 I. & N. Dec. 617, 635 (AAO 2019) (citing *In re V-X-*, 26 I. & N. Dec. 147 (BIA 2013)). "And a grant of benefits under the Family Unity Program confers a 'status' for immigration purposes, but does not constitute an 'admission.'" *Id.* (quoting *In re Fajardo Espinoza*, 26 I. & N. Dec. 603, 605 (BIA 2015)).[4]

---

[4] Although we owe no deference to the agency's interpretation of these statutes, the Immigration and Naturalization Service (INS) General Counsel issued an opinion just one year after Congress enacted the TPS statute endorsing the Government's view. *Temporary Protected Status and Eligibility for Adjustment of Status under Section [1255]*, INS Gen. Counsel Op. No. 91-27, 1991 WL 1185138 (Mar. 4, 1991) (1991 Opinion), *incorporated at* 7 USCIS Policy Manual B.2(A)(5), https://www.uscis.gov/policymanual (advising that a grant of TPS should not be construed as an admission into the United States). And when the INS promulgated regulations later that year, it declined to adopt a proposal that would have allowed TPS recipients to adjust their status no matter how they entered the United States. *See In re H-G-G-*, 27 I. & N. at 621. These agency actions suggest § 1254a(f)(4) was not understood to supersede § 1255(a)'s admission requirement.

B

The statutory context and structure also support our holding that a grant of TPS does not constitute an admission.

Congress created an exception to the admission requirement for some aliens but did not do so for TPS recipients. Instead, it said that an alien with TPS "shall be considered as being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1254a(f)(4). It did not say the alien would also be considered "inspected and admitted or paroled," which is the first requirement for adjustment of status under § 1255(a). But Congress did provide an exception to the "inspected and admitted or paroled" requirement for "special immigrants" described by § 1101(a)(27)(J) and aliens eligible for a visa. *See* 8 U.S.C. § 1255(h), (i). Unlike special immigrants and aliens eligible for a visa, TPS recipients were not excepted from the admission requirement because "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (internal citation and quotation marks omitted).

The interpretation Appellees propose also risks rendering part of § 1254a superfluous. Section 1254a(h) enables Congress to pass special legislation adjusting the status of aliens receiving TPS only by a supermajority of the Senate. 8 U.S.C. § 1254a(h)(2). Reading § 1254a(f)(4) to place aliens effectively in lawful status and to satisfy § 1255's threshold requirement would pave a clear path to status adjustment for TPS recipients in derogation of § 1254a(h)(2)'s supermajority requirement. We doubt Congress intended that. *See Hibbs v.*

10

*Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (internal quotation marks and citation omitted).

Other subsections in § 1255 refer to admission and lawful status as distinct concepts, further highlighting the independent significance of both. For example, § 1255(k) says an alien is eligible for adjustment of status if "subsequent to such lawful *admission* [the alien] has not . . . failed to maintain, continuously, a lawful *status*." 8 U.S.C. § 1255(k)(2)(A) (emphasis added). And § 1255(m)(1) provides: "The Secretary of Homeland Security may adjust the *status* of an alien *admitted* into the United States (or otherwise provided nonimmigrant status)." 8 U.S.C. § 1255(m)(1) (emphasis added).

Beyond the textual differences between the sections, the structure of § 1255 also supports our opinion that §§ 1254a(f)(4) and 1255(a) refer to different requirements. If being considered in lawful nonimmigrant status was the same as being inspected and admitted or paroled, there would be no need for § 1255 to list inspection and admission or parole as a threshold requirement in § 1255(a) and failure to maintain lawful status as a bar to eligibility for adjustment of status in § 1255(c)(2). Under Appellees' theory, anyone who is considered in lawful status would be able to satisfy § 1255(a)'s admission requirement, thus rendering the two provisions superfluous.

C

Finally, Appellees' interpretation would undermine the purpose of the TPS statute. As we have held, "[b]y the terms of

11

the statute, the TPS program was designed to shield aliens already in the country from removal when a natural disaster or similar occurrence has rendered removal unsafe." *De Leon-Ochoa*, 622 F.3d at 353. As its name suggests, this protection is meant to be temporary. Treating a grant of TPS as an admission would open the door to more permanent status adjustments that Congress did not intend.

## IV

The District Court did not read the INA in the manner we just described. Instead, it cited *Flores v. USCIS*, 718 F.3d 548 (6th Cir. 2013), and *Ramirez v. Brown*, 852 F.3d 954 (9th Cir. 2017), to support its conclusion that a grant of TPS constitutes an admission. We respectfully disagree with those opinions.

## A

The petitioner in *Flores*, Saady Suazo, entered the United States without inspection or admission in 1998. 718 F.3d at 550. The Attorney General granted Suazo TPS in 1999 and he remained in the United States for the next fifteen years. *Id.* at 549–50. After marrying an American citizen, Suazo sought adjustment of status through an "Immediate Relative Petition." *Id.* at 550. The USCIS denied his petition because he entered the United States without inspection. *Id.* Suazo was also unsuccessful in the district court, which held the plain language of § 1255 "precludes a TPS beneficiary who was not initially 'inspected and admitted or paroled' into the United States . . . from adjusting his status." *Id.* at 550–51.

On appeal, Suazo argued the plain language of § 1255 "shows that Congress's clear intent was that a TPS beneficiary

is afforded with a pathway to [Lawful Permanent Resident] status." *Id.* at 552. Although he conceded that an alien must be "admitted" to be eligible for adjustment of status, Suazo argued "TPS beneficiaries are afforded with an exception under the TPS statute which operates as an inadmissibility waiver." *Id.* The Sixth Circuit agreed, holding the text of §§ 1254a and 1255 suggests TPS functions as an inspection and admission for aliens who entered the country illegally. *Id.* at 551–54.

In so holding, the Sixth Circuit purported to follow the plain language of §§ 1254a and 1255. *Id.* at 553. It reasoned that to have lawful status as a nonimmigrant under § 1255, an alien must also be considered admitted. *Id.* It took § 1254a(f)(4)'s statement about status and applied it to all of § 1255, including the admission requirement. *Id.* The court also considered "the statutory scheme as a whole." *Id.* It noted that although the Attorney General has discretion to waive certain grounds of inadmissibility for groups of aliens, § 1254a also explicitly limits the Attorney General's discretion as to particular groups. *Id.* TPS recipients are not included in the groups of aliens prohibited from discretionary relief, so the court reasoned that "Congress did not intend to strip the Attorney General of discretion to waive admissibility requirements for all TPS beneficiaries." *Id.* at 554. Moreover, the court took TPS recipients' absence from a list of "[c]lasses of aliens ineligible for visas or admission" as further proof that they are eligible for adjustment of status, regardless of whether they were admitted when they entered the United States. *Id.* (quoting 8 U.S.C. § 1182) (alteration in original).

The *Flores* court also relied on "Congress's apparent intent" to conclude that, because "a TPS beneficiary is a member of a class of people that Congress chose to protect," courts should read § 1254a(f)(4) as satisfying § 1255's

13

admission requirement. *Id.* And finally, the court considered policy considerations, saying "[the petitioner] seems to be the exact type of person that Congress would have in mind to allow adjustment of status," *id.* at 555, and it was "disturbed by the Government's incessant and injudicious opposition in cases like this," *id.* at 556.

We disagree with the Sixth Circuit's interpretation for three reasons.

*First*, the court concluded § 1254a(f)(4) should be read as satisfying all of § 1255's requirements. *Id.* at 553. But that conflates "lawful status" with "admission." Even if § 1254a applies to all of § 1255, it does not follow that considering an alien to be in lawful status means he or she was admitted into the United States. As we explained already, status and admission are distinct—an alien can possess lawful status without ever having been admitted.

*Second*, we find the court's analysis of the "statutory scheme as a whole" and Congressional intent unpersuasive. TPS recipients' exclusion from a list of aliens ineligible for discretionary relief has no bearing on whether they are excused from § 1255's admission requirement. Moreover, the very nature of TPS—a program of *temporary* protection—undermines the Sixth Circuit's conclusion that Congress intended to waive § 1255's admissibility requirement so TPS recipients could readily become permanent residents.

*Third*, although the court claimed to be guided by the text of §§ 1254a and 1255, it betrayed its policy-driven approach at the outset of its opinion, stating:

14

> This case illustrates the archaic and convoluted state of our current immigration system. While many suggest that immigrants should simply "get in line" and pursue a legal pathway to citizenship, for Saady Suazo and other similarly situated Temporary Protected Status beneficiaries, the Government proposes that there is simply no line available for them to join.

*Id.* at 549.

We express no opinion about the merits of this broadside against how the other branches of the federal government have handled immigration policy. If it's true that our nation's immigration system is "archaic" or "convoluted," such criticism is no substitute for a careful evaluation of the statute's text, context, and history. The court ended its opinion by saying it was "disturbed" by the Government's position in the case and it considered Suazo—whom the court called a "contributing member of society"—"the exact type of person" that Congress would have wanted to be eligible for adjustment of status. *Id.* at 555–56. But a petitioner's personal characteristics, however commendable they may be, are irrelevant to whether he or she has satisfied § 1255's requirements. *See* 28 U.S.C. § 453 (requiring federal judges to "administer justice without respect to persons").

B

The Ninth Circuit's decision in *Ramirez* is similarly unpersuasive. As in *Flores*, the *Ramirez* court considered whether a TPS recipient who entered the United States without inspection or admission was eligible for adjustment of status by virtue of marrying an American citizen. 852 F.3d at 957.

15

The Ninth Circuit agreed with the Sixth Circuit that an alien who is considered in lawful status under § 1254a(f)(4) should also be considered to have been admitted under § 1255(a). *Id.* at 959. To support this conclusion, the court cited several sections of the immigration code in which Congress discussed "admission" and "nonimmigrant" status together and held that "by the very nature of obtaining lawful nonimmigrant status, the alien goes through inspection and is deemed 'admitted.'" *Id.* at 960.

The court also emphasized similarities in the rigor of the admission and TPS application processes and concluded that an alien who receives TPS has also been admitted. *Id.* And although the court acknowledged its interpretation of §§ 1254a and 1255 does not align with the statutory definition of "admitted," it cited Ninth Circuit caselaw allowing it to "'embrace[] an alternative construction of the term' when the statutory context so dictates." *Id.* at 961 (quoting *Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1052 (9th Cir. 2014)).

The *Ramirez* court then turned to the structure of the statutory scheme to support its interpretation. First, it concluded that the title of § 1255—"Adjustment of status of nonimmigrant to that of person admitted for permanent residence"—shows that Congress intended TPS recipients to be able to "make use of § 1255." *Id.* It then discussed § 1254a(f)(4)'s applicability to § 1258(a), which provides that "[t]he Secretary of Homeland Security may . . . authorize a change from any nonimmigrant classification to any other nonimmigrant classification in the case of any alien lawfully admitted to the United States as a nonimmigrant who is continuing to maintain that status." *Id.* (alterations in original). The court concluded that § 1254a(f)(4) satisfies § 1255's admission requirement because it "equates 'being in . . . lawful

16

status as a nonimmigrant' with § 1258(a)'s 'lawfully admitted . . . as a nonimmigrant.'" *Id.* at 961–62 (alterations in original). It also opined that an alternative interpretation would limit § 1254a(f)(4)'s applicability to § 1255(c)(2) and "yield an anomalous result" by not benefitting immediate relatives of American citizens. *Id.* at 962.

Finally, the Ninth Circuit held its interpretation of §§ 1254a and 1255 is consistent with the purpose of TPS. *Id.* at 963. It explained: "Because TPS confers an actual status on and provides a slew of benefits to an alien who satisfies rigorous eligibility requirements, it is different than other forms of temporary reprieve we ordinarily would not consider sufficient for 'admission.'" *Id.* And it reasoned that forcing TPS recipients to leave the United States, return to their homelands, then reenter with inspection and admission or parole, would undermine TPS's purpose of protecting aliens from unsafe conditions in those countries. *Id.* at 964.

We disagree with the Ninth Circuit's decision in *Ramirez* largely for the reasons we disagree with the Sixth Circuit's decision in *Flores*.

*First*, the court failed to acknowledge the meaningful differences between "status" and "admission" that we previously explained. And § 1254a(f)(4) is clear—aliens with TPS are granted only lawful status, they are not "admitted." Moreover, the court overlooked distinctions between a conferral of TPS and an admission. For example, an alien at a port of entry may be subject to a full range of inadmissibility grounds that an applicant for TPS is not. *Compare* 8 U.S.C. § 1182(a) *with* 8 U.S.C. § 1254a(c)(2).

17

*Second*, the Ninth Circuit brushed off the statutory definition of "admission" because its own caselaw allowed it to "embrace[] an alternative construction of the term when the statutory context so dictates." *Ramirez*, 852 F.3d at 961 (internal citation and quotation marks omitted). Our caselaw does not permit such a move. *See Hanif*, 694 F.3d at 485. Instead, we are bound to follow Congress's definition in § 1101(a)(13)(A), which defines admission as the physical event of entering the country. *Taveras*, 731 F.3d at 290.

*Third*, the Ninth Circuit's discussion of the structure of the immigration code is unpersuasive. The court said the title of § 1255 suggests Congress intended TPS recipients to be able to "make use" of its process for adjusting status. *Ramirez*, 852 F.3d at 961. Fair enough. But § 1255 also establishes that adjustment of status is available only for TPS recipients *lawfully admitted* into the United States. The Ninth Circuit also reasoned that limiting § 1255 eligibility to TPS recipients lawfully admitted when they entered the United States would "yield an anomalous result" by not benefitting relatives of American citizens. *Id.* at 962. This rationale ignores the fact that TPS recipients who marry American citizens will be eligible for adjustment of status so long as they were inspected and admitted or paroled when they entered the United States. So our interpretation does not bar eligibility for TPS recipients who entered the country legally.[5]

---

[5] Nonimmigrants inspected and admitted or paroled when they entered the United States are eligible for TPS. *See, e.g.*, *Saliba v. Att'y Gen.*, 828 F.3d 182, 186 (3d Cir. 2016) (nonimmigrant who lawfully entered the United States on a student visa applied for, and received, TPS); *Mejia Rodriguez*, 562 F.3d at 1140 (same for nonimmigrant with B-2 visa).

*Fourth*, the court compared § 1254a to other sections of the immigration code and concluded that § 1254a(f)(4) "equates 'being in . . . lawful status as a nonimmigrant' with § 1258(a)'s 'lawfully admitted . . . as a nonimmigrant.'" *Id.* at 961–62 (alterations in original). But that analysis again failed to recognize the difference between "status" and "admission." Section 1258(a) applies to "any alien lawfully *admitted* to the United States as a nonimmigrant who is continuing to maintain that *status*." (emphasis added). Nothing in § 1258(a) suggests that we should collapse the admission and status elements into a single requirement. Instead, § 1254a(f)(4) applies to § 1258(a) (just like § 1255) to excuse only a lapse in lawful status following a lawful admission.

*Finally*, the Ninth Circuit's discussion of the purpose of TPS is contradictory. The court correctly noted that TPS "provides a *limited, temporary* form of relief." *Id.* at 963 (emphasis added). But then it interpreted § 1254a(f)(4) broadly to satisfy § 1255's admission requirement. *Id.* Absent a clear statutory directive, a program that provides "limited, temporary" relief should not be read to facilitate permanent residence for aliens who entered the country illegally.

The court reasoned further that forcing TPS recipients who entered illegally to leave the country and reenter lawfully before seeking adjustment of status would undermine the purpose of TPS. *Id.* at 964. According to the Ninth Circuit, this process would be particularly troubling for TPS recipients because their home countries are unsafe. *Id.* But that ignores the fact that TPS recipients may remain in the United States—without seeking adjustment of status—as long as the Secretary of Homeland Security extends TPS for their homelands. Although they may be unable to adjust their status during that

19

time (if they entered the country illegally), they are free to remain in the United States with lawful nonimmigrant status.

For these reasons, we respectfully disagree with the Sixth and Ninth Circuits' interpretations of the statute. We hold that Congress did not intend a grant of TPS to serve as an admission for those who entered the United States illegally.[6]

V[7]

We cannot square the District Court's opinion with the text, context, structure, and purpose of §§ 1254a and 1255. For

---

[6] Our interpretation of §§ 1254a and 1255 is closely aligned with the Eleventh Circuit's opinion in *Serrano v. Att'y Gen.*, 655 F.3d 1260 (11th Cir. 2011) (per curiam). There, the petitioner argued he was exempt from § 1255(a)'s admission requirement because he had been granted TPS. 655 F.3d at 1265. Although that argument is slightly different than the argument raised in this appeal (and in *Flores* and *Ramirez*), the court said: "That an alien with Temporary Protected Status has 'lawful status as a nonimmigrant' for purposes of adjusting his status does not change § 1255(a)'s threshold requirement that he is eligible for adjustment of status only if he was initially inspected and admitted or paroled." *Id.* That holding, like ours today, respects the distinction between status and admission and is faithful to the text of §§ 1254a and 1255.

[7] Sanchez and Gonzalez also argue they are eligible for adjustment of status under § 1255(k). That section provides an exception for aliens seeking to adjust status for employment purposes if, *inter alia*, the alien "on the date of filing an application for adjustment of status, is present in the United States pursuant to a lawful admission." Because Sanchez and

the foregoing reasons, we hold that a grant of TPS does not constitute an "admission" into the United States under § 1255. We will reverse.

---

Gonzalez were never admitted, they are ineligible for adjustment under § 1255(k).