# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-1846

———————

| | |
|---|---|
| Daniel Rolando Ortega-Marroquin, \* | |
| \* | |
| Petitioner, \* | |
| \* | |
| v. \* | |
| \* | |
| Eric. H. Holder, Jr., Attorney General \* | Petition for Review of an |
| of the United States, \* | Order of the Board of |
| \* | Immigration Appeals. |
| Respondent. \* | |
| _____ \* | |
| \* | |
| American Immigration Council; \* | |
| National Immigration Project of the \* | |
| National Lawyers Guild, \* | |
| \* | |
| Amici on Behalf of Petitioner. \* | |

———————

Submitted: February 17, 2011
Filed: May 23, 2011

———————

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

Daniel Rolando Ortega-Marroquin ("Ortega") appeals from a final order of removal by the Board of Immigration Appeals. He seeks review of the Board's decision to reverse itself by granting the government's motion for reconsideration and

vacating the Board's prior decision (that had allowed Ortega to reopen his case). Having jurisdiction under 8 U.S.C. § 1252(a)(1), this court remands for further proceedings.

I.

Ortega, a native of Guatemala, illegally entered the United States in April 1992. In June, he formally requested asylum in the United States (claiming past persecution by gangs of guerillas), which was denied. In February 2006, the Department of Homeland Security issued a "Notice to Appear" in immigration court, charging him with illegally entering the United States. In the removal proceedings, Ortega renewed his asylum application and in 2007 requested both withholding and cancellation of removal with the aid of his attorney, Subhash Chandra.

At a hearing in February 2009, Ortega was represented by Robert Wees, a member of Chandra's firm. With permission of the immigration judge, Wees filed an amended cancellation-of-removal application (changing the addresses and updating other information from the application filed by Chandra). The immigration judge issued an oral decision denying Ortega's claims for asylum, withholding of removal, and cancellation of removal. The immigration judge found that Ortega had satisfied the continuous-physical-presence and good-moral-character requirements for cancellation, had committed no disqualifying crime, but failed to demonstrate that his qualifying relatives (his two U.S.-citizen children) would suffer exceptional and extremely unusual hardship as a result of his removal. *See* **Immigration and Naturalization Act § 240A(b)**; **8 U.S.C. § 1229b(b)**. The immigration judge found that Ortega's children had no significant medical issues. The immigration judge granted Ortega 60 days to depart the United States voluntarily in lieu of removal.

Ortega appealed to the Board. On June 22, 2009, it affirmed the immigration judge's decision in all respects, again granting Ortega 60 days to depart voluntarily.

On July 23, 2009, Ortega filed a petition for review of the Board's decision with this court (No. 09-2740). He filed pro se and *in forma pauperis* with the help of a "notario."[1] In the petition, Ortega argued that his former counsel Chandra was ineffective because Chandra knew but omitted in the cancellation-of-removal application that Ortega's children suffer serious medical conditions, and in fact told Ortega that unless his children were on their death beds, medical evidence was not worth submitting. Ortega claims Chandra's error was perpetuated by Wees at the removal hearing and in the appeal to the Board. According to Ortega, his two U.S.-citizen children suffer from various conditions: lupus, a heart defect, a potentially cancerous eye tumor, recurrent bronchitis and asthma attacks, and severe clinical depression.

In August 2009, this court denied a stay of removal. *See Ortega-Marroquin v. Holder*, No. 09-2740 (8th Cir. Aug. 20, 2009) (Order) (ECF/PACER electronic docket). While Ortega's petition for review of his asylum and withholding-of-removal claims was pending with this court, Homeland Security took Ortega into custody on October 28, 2009. While still in the United States, he filed an "emergency motion" for a stay of removal with this court, which was denied on November 6, 2009. *See Ortega-Marroquin v. Holder*, No. 09-2740 (8th Cir. Nov. 6, 2009) (Order) (ECF/PACER electronic docket).

---

[1] In some countries, the position of "Notario Publico" has greater responsibilities than an American notary public: a "notario" is a trained legal advisor responsible for the legality of the content of the document, as opposed to only the identity of the signer. "Notarios" assist in the incorporation of companies, the buying and selling of real estate, the drafting of deeds and wills, the creation of mortgages, and other transactions. In the United States, some notaries (both real and false) call themselves "notarios" to take advantage of immigrants unaware of the distinction between "notario publico" and "notary public."

On November 23, 2009, now aided by his current counsel, Ortega filed an (untimely) motion to reopen his case with the Board, asking it to stay his removal pending adjudication of the motion. Ortega argued that his case should be reopened because of the ineffectiveness of prior counsel, providing new documentation of his children's health issues. Ortega acknowledged that under 8 U.S.C. § 1229a(c)(7)(C)(i), he should have filed the motion to reopen within 90 days after the Board's order dismissing his appeal (June 22, 2009). However, Ortega argued that his motion to reopen was timely under the doctrine of equitable tolling, because he relied on his "notario," whose advice led him to file a pro se petition for review (on the ineffectiveness grounds) within the 90-day time limit in *this* court instead of with the Board. Further, once he realized his mistake, he hired current counsel and promptly filed the motion to reopen with the Board.

On November 24 (the next day), the Board denied Ortega's request for a stay of removal, finding little likelihood it would grant the motion to reopen. On December 17, Homeland Security removed Ortega to Guatemala.

Unaware that Ortega had been removed, the Board, on February 1, 2010, exercised its *sua sponte* reopening authority and granted Ortega's untimely motion to reopen his case. The Board said that "given all the circumstances presented, including the unrebutted representations that former counsel told the respondent he need not bother presenting evidence regarding his children's medical conditions, the particular situation of this family, and the lack of opposition from the Department of Homeland Security, we will grant this motion under our sua sponte authority." While noting that Ortega sought to equitably toll the filing deadline for a motion to reopen, the Board did not rule on this issue; the basis of the grant was the Board's *sua sponte* authority.

On February 12, the government moved for reconsideration, informing the Board that Ortega had been removed in December, before the Board reopened his proceedings. The government argued that because Ortega was no longer in the United

-4-

States, the Board could not rule on his motion to reopen, due to the departure bar in the immigration regulations, 8 C.F.R. § 1003.2(d): "Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion."

On March 19, the Board granted the government's motion, vacated its prior decision to *sua sponte* reopen Ortega's case, and denied his motion to reopen. The Board determined: "As the respondent was removed subsequent to filing the motion to reopen, his departure resulted in the withdrawal of that motion." The Board rejected as non-binding authority in this circuit Ortega's invocation of a Ninth Circuit case holding that involuntary removal by the government does not withdraw an alien's pending motion to reopen. *See **Martinez Coyt v. Holder***, 593 F.3d 902, 907 (9th Cir. 2010). The Board followed its precedent, *Matter of Armendarez-Mendez*, 24 I&N Dec. 646 (BIA 2008), upholding the departure bar regulation and its lack of jurisdiction over motions after an alien's departure.

In April 2010, Ortega filed this petition for review of the Board's March decision. Still pending in this court was his first petition (No. 09-2740), challenging the merits of the Board's denial of his applications for asylum and withholding of removal. Ortega did not move to consolidate the two petitions. In May, this court denied Ortega's first petition on the merits. *See **Marroquin v. Holder***, 373 Fed. App'x 642 (8th Cir. 2010) (per curiam). This appeal challenges only the Board's decision to rescind its *sua sponte* grant of Ortega's untimely motion to reopen, on the basis of the departure bar.

II.

Ortega challenges the validity of the departure bar regulation. This court reviews questions of law de novo and accords "substantial deference" to the Board's

-5-

interpretation of immigration law and agency regulations. ***Bernal-Rendon v. Gonzales***, 419 F.3d 877, 880 (8th Cir. 2005). This court reviews constitutional challenges to immigration proceedings de novo. ***Habchy v. Gonzales***, 471 F.3d 858, 862 (8th Cir. 2006); ***Shoaira v. Ashcroft***, 377 F.3d 837, 842 (8th Cir. 2004).

*Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), governs challenges to the validity of an agency regulation, including resolution of ambiguities in the immigration statutes. ***INS v. Aguirre-Aguirre***, 526 U.S. 415, 424 (1999). First, the court must determine if Congress has made clear its intent by examining the plain meaning of the statute and, if necessary, employing traditional rules of statutory construction. If Congress's intent is clear, it governs—the courts, as well as the agency, "must give effect to the unambiguously expressed intent of Congress." ***Chevron***, 467 U.S. at 842-43. Second, if congressional intent cannot be discerned, a court must consider whether the agency interpretation is a reasonable and permissible construction of the statute. ***Id.*** Last, "lingering ambiguities in deportation statutes" must be construed "in favor of the alien." ***INS v. St. Cyr***, 533 U.S. 289, 320 (2001) (quoting ***INS v. Cardoza-Fonseca***, 480 U.S. 421, 449 (1987)).

A motion to reopen asks the Board to change its decision "in light of newly discovered evidence or a change in circumstances since the hearing." ***Dada v. Mukasey***, 554 U.S. 1, 12 (2008). Originally a judicial creation, it was later codified in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). ***Id.*** Under current law, "[a]n alien may file one motion to reopen proceedings," which "shall be filed within 90 days of the date of entry of a final administrative order of removal." **8 U.S.C. §§ 1229a(c)(7)(A) & (C)(i)**, *discussed in* ***Dada***, 554 U.S. at 12-15. There are two exceptions to the 90-day deadline: 1) an asylum-based motion that claims changed country conditions; and 2) where the alien is a battered spouse, child of a battered spouse, or parent of a battered child. *See* **8 U.S.C. § 1229a(c)(7)(C)(ii) & (iv)**.

The departure bar regulation of the Department of Justice provides, "Any departure from the United States, including the deportation or removal of a person who is the subject of . . . removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion." **8 C.F.R. § 1003.2(d)**. Ortega argues that this regulation is invalid because it conflicts with the statutory right that "[a]n alien may file one motion to reopen proceedings." *See* **8 U.S.C. § 1229a(c)(7)(A)**. Ortega contends that the statute does not differentiate between an alien in the United States and one outside the United States, so it permits either to file (and have decided) one motion to reopen proceedings. The Board, Ortega says, should not interpret the departure bar as limiting its jurisdiction over motions to reopen, as an agency cannot contract its own jurisdiction through regulation or decision. *Compare* **Matter of Armendarez-Mendez**, 24 I&N Dec. 646 (BIA 2008) (holding that the Board is stripped of jurisdiction by operation of the departure bar regulation), *with* **Union Pacific R.R. Co. v. Brotherhood of Locomotive Engineers**, 130 S.Ct. 584, 590-91 & 596-98 (2009) (holding that administrative agencies directed by Congress to adjudicate particular controversies may not contract their own jurisdiction through regulation or decision), **Pruidze v. Holder**, 632 F.3d 234, 237-40 (6th Cir. 2011) (holding that the Board does not lack jurisdiction to consider an alien's motion to reopen once the alien is no longer in the United States), *and* **Marin-Rodriguez v. Holder**, 612 F.3d 591, 593-94 (7th Cir. 2010) (holding the departure bar invalid because the Board cannot limit its jurisdiction by regulation). Regardless, Ortega argues that under principles of fundamental fairness and procedural due process, the departure bar should not be applied to him, as his pending motion to reopen was deemed withdrawn because the government forcibly and involuntarily removed him from the United States.

According to the government, whether the one-motion-to-reopen statute supplants the departure bar regulation is not before this court, as Ortega moved to reopen long after the 90-day statutory deadline expired. Because he failed to satisfy

the explicit statutory deadline, the government reasons that Ortega's untimely motion does not fall within the motion-to-reopen statute's reach.

The Board originally granted Ortega's motion to reopen under its *sua sponte* authority. *See* **8 C.F.R. §§ 1003.2(a)** ("The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision."). This *sua sponte* reopening authority, like the departure bar, is authorized only by regulations promulgated by the Attorney General, not by a statute. *See* 8 U.S.C. § 1229a(c). Applying the departure bar to preclude the Board's *sua sponte* reopening authority does not clearly and unambiguously conflict with the text of the statute, as no statutory provision authorizes an alien to file a motion to reopen outside the time limits specified (except for the two exceptions inapplicable here). In short, only the regulations permit the Board to grant an untimely motion using its *sua sponte* authority, but that authority is itself limited by the departure bar. *See* ***Zhang v. Holder***, 617 F.3d 650, 665 (2nd Cir. 2010) (holding that the Board's interpretation of the departure bar as a limitation on the Board's *sua sponte* authority was reasonable under *Chevron*).

To fall within the scope of the motion-to-reopen statute, Ortega must show that the filing deadline is subject to equitable tolling, thereby excusing its lateness. The 90-day deadline for filing motions to reopen is subject to equitable tolling. *See* ***Hernandez-Moran v. Gonzales***, 408 F.3d 496, 499-500 (8th Cir. 2005). The government claims Ortega waived the issue of equitable tolling by not raising it in his opening brief. In fact, Ortega raised the issue of equitable tolling due to ineffective assistance of counsel in his opening brief, but did not brief the merits of the equitable-tolling and ineffective-assistance-of-counsel arguments because the Board decision here did not decide whether the doctrine of equitable tolling applied to his case. *See* ***SEC v. Chenery Corp.***, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the

agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."); *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *Mouawad v. Gonzales*, 485 F.3d 405, 413-14 (8th Cir. 2007) (citing the *Chenery* principle in remanding the case to the Board to consider arguments that were never explicitly considered).

Had the Board addressed Ortega's equitable-tolling claim, tolled the 90-day deadline, and then deemed the motion withdrawn by operation of the departure bar, the validity of the departure bar would be before this court. However, the Board did not address this issue, so whether the departure bar conflicts with 8 U.S.C. § 1229a(c)(7) is a hypothetical question not properly before this court. *See KCCP Trust v. City of North Kansas City*, 432 F.3d 897, 899 (8th Cir. 2005) ("Article III limits the federal courts to deciding 'Cases' and 'Controversies' and thus prohibits us from issuing advisory opinions."); *Pub. Water Supply Dist. No. 8 v. City of Kearney*, 401 F.3d 930, 932 (8th Cir. 2005) ("One kind of advisory opinion is an opinion advising what the law would be upon a hypothetical state of facts.") (internal quotation marks and citation omitted).

Under these circumstances, this court remands this case to the Board to consider Ortega's equitable-tolling claim. *See Gonzales v. Thomas*, 547 U.S. 183, 187 (2006) (per curiam) ("A court of appeals is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. . . . Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotation marks and citation omitted); *INS v. Orlando Ventura*, 537 U.S. 12, 16-18 (2002) (per curiam) (holding that the court of appeals should have remanded an asylum issue to the Board instead of considering it de novo, where the Board did not consider the government's alternative argument in regard to the asylum application: "Generally

speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."). On remand, the Board should determine whether Ortega's motion to reopen was timely filed pursuant to 8 U.S.C. § 1229a(c)(7)(C) under the doctrine of equitable tolling, given his claim of ineffective assistance of counsel, and if so, rule on the motion, whether on the basis of the departure bar or other grounds.

* * * * * * *

The petition is granted. The Board's order of March 19, 2010, is vacated, and the matter remanded for further proceedings consistent with this opinion.

_____